1 Kent C. Wilson, Esq. CSB#058652
943 Imperial Avenue,
2 Suite "G"
Calexico, CA  92231
3 (760) 357-1193
(619) 923-2677 e-fax.
4
Attorney for Plaintiffs
5 GEOFFREY MONCRIEF, LEILA MONCRIEF
6
7
8
9                     UNITED STATES DISTRICT COURT
10                    SOUTHERN DISTRICT OF CALIFORNIA
11
12 GEOFFREY     MONCRIEF,     LEILA          Case No. 10 CV 0350    DMS RBB
   MONCRIEF, individuals,
13
              Plaintiff,                     COMPLAINT FOR DAMAGES, QUIET
14                                           TITLE, INJUNCTION, & OTHER
         v.                                  EQUITABLE RELIEF
15
16 WASHINGTON MUTUAL, FA, LA JOLLA          1.  Intentional Misrepresentation
   FINANCE CORPORATION, JP MORGAN           2.  Fraudulent Concealment
17 CHASE,     N.A.,     CALIFORNIA          3.  Breach of Fiduciary Duty
                                            4.  Constructive Fraud
18 RECONVEYANCE COMPANY, as Trustee         5.  Quiet Title
   on the First Deed of Trust, & DOES 1 through  6.  Violations of TILA
19 10,                                      7.  Violation of RESPA
20
21            Defendants.                         DEMAND FOR JURY
   _____/
22
          COME   NOW   PLAINTIFFS,   GEOFFREY   MONCRIEF   and   LEILA
23
   MONCRIEF, individuals, who allege damages and seek equitable relief against the
24
   Defendants, and each of them, as follows:
25
26                          **JURISDICTION & VENUE**
27
          1.      Jurisdiction is conferred upon the court pursuant to Title 28, § 1331 as
28
   there is a federal question and the lawsuit is based on various federal statutes.  Plaintiff

1   relies on federal statutes 15 U.S.C.A. § 1691 et seq., 15 U.S.C.A. § 1601 et seq., 12

2   U.S.C.A. § 2601 et seq., and 15 U.S.C.A. § 1681, et seq. on which to base their claims.

3   Venue is conferred as the property is located and all transactions took place and all

4   parties reside within San Diego County, California, which is within the boundary of the

5   United States District Court for the Southern District of California.

6

7                           **PRELIMINARY ALLEGATIONS**

8       2.      At all times relevant herein, Plaintiffs GEOFFREY MONCRIEF and

9   LEILA MONCRIEF (hereinafter "Plaintiffs') are the owners of a single family residence

10  in San Diego County whose address is 417 Sea Ridge Drive, La Jolla, CA 92037.

11      3.      At all times relevant herein, Plaintiffs are informed and believe that

12  Defendants WASHINGTON MUTUAL, FA (hereinafter "Washington Mutual"), LA

13  JOLLA FINANCE CORPORATION (hereinafter "La Jolla Finance"), J.P. MORGAN

14  CHASE, N.A. (hereinafter "Chase"), and CALIFORNIA RECONVEYANCE

15  COMPANY are corporations, limited liability companies, or other forms of business

16  entities doing business in San Diego County, California and/or the Trustee of that certain

17  Deed of Trust listing Plaintiff as Borrower, which is the subject of this Complaint.

18      4.      At all times relevant herein, Plaintiffs are informed and believe and

19  thereon allege that, DOES 1 through 10, inclusive, true names, identities and capacities,

20  whether individual, corporation, association, partnership or otherwise are at this time

21  unknown to Plaintiff who therefore sues said Defendants by such fictitious names and

22  will so amend the complaint to show the true names and capacities of such Doe

23  Defendant(s) when the same are ascertained.

24      5.      At all times relevant herein, Defendants are sued and were acting as

25  principal, employer and/or the agent, servant and employee of said principal(s) or

26  employer(s), and all of the acts performed by them, or their agents, servants and

27  employees, were performed with the knowledge and under the control of said principal(s)

28

1    or employer(s) and all such acts performed by such agents, servants and/or employers,

2    were performed within the course and scope of their authority.

3    **STATEMENT OF FACTS**

4         6.     On or about July 20, 2007, Geoffrey Moncrief (hereinafter "Plaintiff")

5    refinanced the Plaintiffs' primary residence at 417 Sea Ridge Drive, La Jolla, CA 92037

6    (hereinafter "Property").

7         7.     Plaintiff financed the loan by obtaining financing from Defendant

8    Washington Mutual totaling $4,900,00.00 and using the broker services of Defendant La

9    Jolla Finance.

10        8.     After being hired by the Plaintiff, Defendant La Jolla Finance contacted

11   Defendant Washington Mutual to serve as a lender to the Plaintiff.  Plaintiff applied for a

12   fixed rate mortgage.

13        9.     Defendants La Jolla Finance and Washington Mutual conspired to place

14   the Plaintiff into a high cost loan he could not afford because the lender would still make

15   a profit even if it would have to foreclose on the Property.  Moreover, Defendant La Jolla

16   Finance had an incentive to place the Plaintiff into a high risk loan because it would get

17   paid a higher unlawful yield spread premium than it would if Defendant La Jolla Finance

18   arranged a fixed rate mortgage for the Plaintiff.

19        10.     As part of this conspiracy to place the Plaintiff into a more profitable

20   loan, Defendant Washington Mutual paid an unlawful yield spread premium to Defendant

21   La Jolla Finance as an incentive for Defendant La Jolla Finance to "sell" the high risk

22   loan to the Plaintiff.  Washington Mutual enabled and worked with La Jolla Finance to

23   allow La Jolla Finance to breach its fiduciary duties with the Plaintiff.

24        11.     The loan that the Plaintiff applied for was marketed as a fixed payment

25   loan with a 2.4% interest rate.  Instead of a fixed-rate mortgage, the 2.4% interest rate

26   was only locked in place for one month.  After one month, the monthly mortgage

27   payment would increase month to month based on a high margin.

28

3

12.     To induce the Plaintiff into the loan, Defendant Washington Mutual provided a fraudulent Truth in Lending (hereinafter "TILA") statement. Defendants Washington Mutual and La Jolla Finance provided the Plaintiff with this fraudulent Final TILA statement, which is dated July 20, 2007. The false TILA statement understated the amount financed by $2,962,869.38. The amount stated on the false document was $9,985,234.99 when the true finance charge was $12,948,104.37.

13.     The false Final TILA statement also under-disclosed the Annual Percentage Rate ("APR") by 2.08%. The true APR was 10.421% when the disclosed APR on the false Final TILA statement was 8.341%.

14.     The false Final TILA statement made the Plaintiff believe that the loan was cheaper than it actually was.

15.     The Plaintiff signed a 4506-T tax transcript release form that would permit Defendants La Jolla Finance and Washington Mutual to receive a transcript of his tax returns to verify whether he qualified for the loan. Defendants La Jolla Finance and Washington Mutual never requested a tax transcript from the Internal Revenue Service (hereinafter "IRS"). Defendants Washington Mutual and La Jolla Finance intentionally did not request the tax transcript because it would proof that the Plaintiff did not qualify for the loan.

16.     Defendant Washington Mutual intentionally created a Stated Income loan program where the Plaintiff would not be required to verify his income. The loan program created by Defendant Washington Mutual gave Defendant La Jolla Finance the ability to make up whatever income was needed to qualify for the loan. La Jolla Finance had an incentive to falsify the Plaintiff's income because it would only get paid if the loan closed.

17.     Plaintiff told Defendant La Jolla Finance his true income during the loan application process, which was approximately $25,000.00 in July 2007. Without Plaintiff's consent, Defendant La Jolla Finance inflated the Plaintiff's income in order to qualify the Plaintiff for the negative amortization mortgage.

4

COMPLAINT OF GEOFFREY MONCRIEF
MONCRIEF v. WASHINGTON MUTUAL, F.A., et. al.

18.     Defendant Washington Mutual did not properly provide the Plaintiff with an initial or final Good Faith Estimate as required by RESPA within three days of the loan application for the loan in March 2007.   Moreover, Defendant La Jolla Finance provided an inaccurate Good Faith Estimate.

19.     Defendant La Jolla Finance, and its agents, including Loan Agent Michael Spencer, made false oral and written representations about the affordability of the loan in or about July 2007 as part of the loan approval process.   Defendants La Jolla Finance and Washington Mutual and its agents claimed that the adjustable rate negative amortization loan was affordable when it fact the loan payments were artificially low because they were being applied to interest-only.

20.     Plaintiff was advised by Defendant La Jolla Finance to make only the minimum payment, which was originally $19,107.13 a month.   This was misleading as for the Plaintiff to truly afford and pay off the loan, the payment should have been $37,184.76 a month, which was substantially more than his income of $25,000.00 a month.   In addition, the negative amortization cap of 115% of the loan balance would already be reached in 2.5 years, at which time the loan would reset and the payment would skyrocket to as high as $52,222.08 a month.

21.     The loan also included a high margin when calculating the interest rate in order to further take advantage of the Plaintiff.   The kickback that Defendant La Jolla Finance got from Defendant Washington Mutual was in part provided to encourage La Jolla Finance to mislead the Plaintiff into accepting a loan with a high margin.

22.     Based on the foregoing and the ultimate loan received in July 2007, Plaintiff's debt to income ratio ended up exceeding the maximum-allowed Debt-to-Income ("DTI") ratio per all usual and customary underwriting guidelines.

23.     By providing the Plaintiff a toxic negative amortization loan with a substantial risk of default, Defendants Washington Mutual and La Jolla Finance made a cold and calculated decision that it could make a profit from the loan transaction with the Plaintiff even if the Defendant Washington Mutual or its successors in interest had to

foreclose on the Property.   The loan to value percentage at the time was 70% so Washington Mutual saw that $2,100,000.00 of the Plaintiff's equity could be used to pay for foreclosure expenses and any other profits it could make from the loan.

24.     To further take advantage of the Plaintiff and to prevent him from refinancing it, the loan included a steep prepayment penalty for a one year period.

25.     Based on the foregoing facts, Plaintiff began having difficulty paying his mortgage.

26.     Defendant California Reconveyance Company recorded a Notice of Default (hereinafter "NOD") against the Property on October 27, 2009.

27.     On February 22, 2010, the Plaintiffs' home will be sold at a Trustee's Sale without legal action.

28.     The misrepresentations and violations of federal and state law were discovered within one year past after a forensic review of his loan documents on or about January 29, 2010.

29.     A rescission letter regarding tender was mailed to Washington Mutual/Chase on February 10, 2010.

30.     A Qualified Written Request ("QWR") was mailed to Defendants Washington Mutual and JP Morgan Chase on February 10, 2010.

## FIRST CLAIM FOR RELIEF
### (Intentional Misrepresentation)

COMES NOW PLAINTIFF GEOFFREY MONCRIEF and for a separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Defendants Washington Mutual, La Jolla Finance, JP Morgan Chase, California Reconveyance Company, as Trustee on the First Deed of Trust, and DOES 1-10, alleges as follows:

6

COMPLAINT OF GEOFFREY MONCRIEF
MONCRIEF v. WASHINGTON MUTUAL, F.A., et. al.

31.     Plaintiff repeats and repleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

32.     Based on Defendant Washington Mutual's and Defendant La Jolla Finance's failure to use the Plaintiff's actual income, the Plaintiff was unknowingly given a toxic negative amortization loan in July 2007 that Plaintiff could not afford.   At all times relevant, Defendants Washington Mutual and La Jolla Finance knew that the Plaintiff could not afford the loan thus Defendants Washington Mutual and La Jolla Finance used a stated income loan program as a means to improve the Debt to Income Ratio to make it appear that the loan was in conformity with underwriting standards used in the industry.

33.     During the loan transaction for the July 2007 loan transaction, Defendants Washington Mutual and La Jolla Finance provided the Plaintiff a fraudulent final Truth in Lending Disclosure that understated the finance charge by over $2,900,000.00 and understated the APR by over 2%.   This misrepresentation made the loan seem cheaper than it really was.

34.     Further, in the loan transaction in July 2007, Defendants Washington Mutual and La Jolla Finance failed to disclose numerous federal safeguards in the application process as outlined above and further outlined in the below.   An omission of these documents in the loan packages submitted to Washington Mutual's underwriters is

evidence that Washington Mutual's senior management did not require their underwriters to employ standard industry underwriting practices.

35.     Defendant Washington Mutual further failed to include the Initial Good Faith Estimate or an Initial TIL within the 3 business days as required in loan transaction at issue in this complaint. The purpose of providing these documents was to apprise the Plaintiff of the terms and costs involving the loans and give Plaintiff the opportunity to shop for alternative financing from another lender.     Such facts are material as a matter of law as they are required to be in the documents pursuant to TILA and RESPA as further set-forth below and failure to accurately state the terms of the loan made the documents in and of themselves is fraudulent.   In addition, culpability on the part of Defendants Washington Mutual and La Jolla Finance is further enhanced by the misrepresentation that the loans were suitable, that the Plaintiff qualified for the loan, that the loan was made so that the Plaintiff could refinance the home instead of serving as part of a securitization scheme, that the Plaintiff was overpaying on his loan because of a inflated appraisal and that Plaintiff did not possibly understand the terms of his loan due to the lack of proper disclosures.

36.     Defendants Washington Mutual and La Jolla Finance made the above referenced false representations knowing of their falsity and with the intent to induce Plaintiff into buying the loan and obtaining financing secured upon the Property that he

could not afford and Defendants Washington Mutual and La Jolla Finance were motivated by greed going far beyond normal profit.

37.     Defendants Washington Mutual and La Jolla Finance intended that the Plaintiff would rely on said false representations.  Such misrepresentations were made by loan agent Michael Spencer of La Jolla Finance along with others whose names are currently unknown to Plaintiff nor are the ascertainable as the discovery has not began in the case but for which the Plaintiff will amend when the identity of such persons becomes known or as proved at time of trial.  Such false representations were also made by the documents themselves as outlined above and were produced by Defendant Washington Mutual to induce Plaintiff into purchase of the faulty loans.

38.     Said false representations and fraudulent concealments by Defendants Washington Mutual and La Jolla Finance were material.

39.     Plaintiff reasonably relied on the above referenced false representations of Defendants Washington Mutual and La Jolla Finance.  The Plaintiff would not have entered into the loan transaction had the Plaintiff known the true facts concerning the loan and would have pursued a more suitable loan elsewhere.

40.     Plaintiff was unaware of the fraud until a forensic audit of his loan documents was conducted and produced on January 29, 2010.

41.     Plaintiff is informed and believes and thereon alleges that as a legal result of the misrepresentation of Defendants Washington Mutual and La Jolla Finance,

9

Plaintiff has suffered severe emotional distress and other damages as a result in an amount in excess of $10,000,000.00 or to be proven at trial.

42.     Defendant JP Morgan Chase became the successor in interest to Defendant Washington Mutual.

43.     Plaintiff is informed and believes the aforementioned loan was sold and resold until they fell under a service contract with Defendant California Reconveyance Company, as Trustee on the Deed in Trust and as trustee for unknown noteholder(s). The above mentioned defects in the loan documents and the missing documents constitute notice that the loan was defective as any reasonable underwriter reviewing the loan file would see the above required documents were not in the file and the errors contained on the face of the documents including the incorrect amount being financed.   Thus any successor or assignee claiming an ownership or beneficial interest in the note underlying this loan cannot claim BFP status as the defects are obvious to any underwriter reviewing the documents in the course of a due diligence examination.

44.     Defendants Washington Mutual and La Jolla Finance committed the acts herein alleged maliciously, fraudulently, and oppressively, with the reckless disregard of Plaintiff's rights.   The conduct of Defendant Washington Mutual was part of a business plan authorized by the highest level of management and their board to instruct their underwriters to ignore normal industry underwriting standards as it would enable Defendant Washington Mutual to make more subprime loans to resell at high profit to the

10

securitized market while Defendant La Jolla Finance would obtain unlawful yield spread premiums to sell their clients into bad loans.  The conduct by the Defendants Washington Mutual and La Jolla Finance amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manner motivated by greed and employed in a cunning manner as part of Defendant Washington Mutual's practices and procedures to ignore industry standards in loan underwriting so which thwarts the purpose of Congress in passing the TILA so as to make unseemly profits and by taking advantage of persons such as the Plaintiff, thereby entitling the Plaintiff to recover punitive damages from Defendants Washington Mutual, La Jolla Finance, JP Morgan Chase, and California Reconveyance Company, as Trustee on the First Deed of Trust, in an amount according to proof.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

## SECOND CLAIM FOR RELIEF

(Fraudulent Concealment)

COMES NOW PLAINTIFF GEOFFREY MONCRIEF, and for a separate and distinct CLAIM FOR RELIEF for fraudulent concealment against Defendants Washington Mutual, La Jolla Finance, JP Morgan Chase, and California Reconveyance Company, as Trustee on the First Deed of Trust, alleges as follows:

45.     Plaintiff repeats and re-alleges paragraphs 1 through 44 and incorporates the allegations by reference herein as through fully set forth.

11

COMPLAINT OF GEOFFREY MONCRIEF
MONCRIEF v. WASHINGTON MUTUAL, F.A., et. al.

46.   Defendants Washington Mutual and La Jolla Finance fraudulently concealed the true cost of the loan by providing false Truth in Lending documents and statements.

47.   Defendants Washington Mutual and La Jolla Finance failed to provide disclosures required by federal and state law, including disclosures required under RESPA and TILA.

48.   Defendant Washington Mutual had a legal duty under federal and state law to make these aforementioned disclosures to the Plaintiff.

49.   Defendant La Jolla Finance had a fiduciary duty and legal duty under federal and state law to make these aforementioned disclosures to the Plaintiff.

50.   Defendants Washington Mutual and La Jolla Finance intended the Plaintiff to rely upon the concealments because it produced the false documents and omitted disclosures required under federal and state law and Defendants Washington Mutual and La Jolla Finance had knowledge the falsity of material omissions.

51.   The Plaintiff had justifiable reliance upon the documents and omissions by Defendants Washington Mutual and La Jolla Finance as the Plaintiff could reasonably rely on the expected lending expertise held by Defendants Washington Mutual and La Jolla Finance.

52.   Plaintiff has suffered economic damages in excess of $10,000,000.00, or in an amount to be proven at trial, as a result from the fraudulent concealments by Defendants Washington Mutual and La Jolla Finance.

53.   Further, Plaintiff is informed and believes and, based thereon, alleges that as a legal result of said fraudulent concealments by Defendants Washington Mutual and La Jolla Finance, Plaintiff has suffered general damages, including severe emotional distress, in an amount exceeding $10,000,000.00, or to be proven at trial.

54.   Plaintiff is informed and believes the aforementioned loan was sold and resold until they fell under a service contract with Defendant California Reconeyance Company, as Trustee on the Deed in Trust and as trustee for unknown noteholder(s). The

above mentioned defects in the loan documents and the missing documents constitute

notice that the loan was defective as any reasonable underwriter reviewing the loan file

would see the above required documents were not in the file and the errors contained on

the face of the documents including the incorrect amount being financed.   Thus any

successor or assignee claiming an ownership or beneficial interest in the note underlying

this loan cannot claim BFP status as the defects are obvious to any underwriter reviewing

the documents in the course of a due diligence examination.

55.    Defendants Washington Mutual and La Jolla Finance committed the acts herein alleged maliciously, fraudulently, and oppressively, with the reckless disregard of Plaintiff's rights.  The conduct of Defendant Washington Mutual was part of a business plan authorized by the highest level of management and their board to instruct their underwriters to ignore normal industry underwriting standards as it would enable Defendant Washington Mutual to make more subprime loans to resell at high profit to the securitized market while Defendant La Jolla Finance would obtain unlawful yield spread premiums to sell their clients into bad loans.  The conduct by Defendants Washington Mutual and La Jolla Finance amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manner motivated by greed and employed in a cunning manner as part of Defendant Washington Mutual's practices and procedures to ignore industry standards in loan underwriting so which thwarts the purpose of Congress in passing the TILA so as to make unseemly profits and by taking advantage of persons such as the Plaintiff, thereby entitling the Plaintiff to recover punitive damages from Defendants Washington Mutual, La Jolla Finance, JP Morgan Chase, and California Reconveyance Company, in an amount according to proof.

## THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

13

1    COMES NOW PLAINTIFF GEOFFREY MONCRIEF, and for a separate and

2   distinct CLAIM FOR RELIEF for breach of fiduciary duty against Defendants La Jolla

3   Finance, Washington Mutual, JP Morgan Chase, and California Reconveyance Company,

4   as Trustee on the First Deed of Trust, alleges as follows:

5       56.    Plaintiff repeats and re-alleges paragraphs 1 through 55 and incorporates

6   the allegations by reference herein as though fully set forth.

7       57.    Defendant La Jolla Finance, including but not limited to its agent

8   Michael Spencer, had fiduciary duties to Plaintiff to act in his best interests to secure for

9   him the best loan available to them and not to engage in the fraudulent concealment and

10  suppression of material facts and the self-enrichment alleged in the foregoing First,

11  Second, and Fourth Claims for Relief.

12      58.    Defendant La Jolla Finance promised a fixed-rate mortgage to the

13  Plaintiff.  Instead of a fixed-rate mortgage, the Plaintiff was offered a negative

14  amortization mortgage.

15      59.    Defendant La Jolla Finance further breached its fiduciary duties to the

16  Plaintiff by providing the Plaintiff with a false Final TILA statement.

17      60.    Defendant La Jolla Finance furthered breached its fiduciary duties to the

18  Plaintiff by failing to inform the Plaintiff that the initial interest-only payment would be

19  insufficient to cover the cost of the loan.

20      61.    Defendant La Jolla Finance failed to properly give the Plaintiff two

21  copies of the Notice of Right to Cancel and Plaintiff has used his right to rescind the loan

22  by issuing a rescission letter through counsel on February 10, 2010.

23      62.    By knowingly and intentionally engaging in the above-described

24  fraudulent concealments and self-serving conduct and in not advising Plaintiff that he

25  was being put into a loan that La Jolla Finance knew or should have known he could not

26  afford, Defendant La Jolla Finance breached those fiduciary duties it owed to Plaintiff.

27      63.    Defendant Washington Mutual assisted in the act Defendant La Jolla

28  Finance's breach of its fiduciary duties by providing an unlawful yield spread premium

14

COMPLAINT OF GEOFFREY MONCRIEF
MONCRIEF v. WASHINGTON MUTUAL, F.A., et. al.

of $49,000.00 to La Jolla Finance and by qualifying the Plaintiff the mortgage with the knowledge that the loan would have a substantially high risk of resulting in a foreclosure of the Property.

64.     Plaintiff is informed and believes and, based thereon, alleges that as a legal result of said breaches of fiduciary duties by Defendant La Jolla Finance with the assistance of Defendant Washington Mutual, Plaintiff suffered economic damages in an amount exceeding $10,000,000.00, or to be proven at trial.

65.     Further, Plaintiff is informed and believes and, based thereon, alleges that as a legal result of said breaches of fiduciary duties by Defendant La Jolla Finance with the assistance of Defendant Washington Mutual, Plaintiff has suffered general damages, including severe emotional distress, in an amount exceeding $10,000,000.00, or to be proven at trial.

66.     Plaintiff is informed and believes the aforementioned loan was sold and resold until they fell under a service contract with Defendant California Reconveyance Company, as Trustee on the Deed in Trust and as trustee for unknown noteholder(s). The above mentioned defects in the loan documents and the missing documents constitute notice that the loan was defective as any reasonable underwriter reviewing the loan file would see the above required documents were not in the file and the errors contained on the face of the documents including the incorrect amount being financed.   Thus any successor or assignee claiming an ownership or beneficial interest in the note underlying this loan cannot claim BFP status as the defects are obvious to any underwriter reviewing the documents in the course of a due diligence examination.

67.     Defendant JP Morgan Chase is the successor in interest to Defendant Washington Mutual.

68.     Defendants La Jolla Finance and Washington Mutual committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Plaintiff's rights.   Said conduct was carried out in a despicable, deliberate, cold, callous and intentional manner, thereby entitling Plaintiff to recover punitive damages from

1  Defendant Washington Mutual, La Jolla Finance, JP Morgan Chase, and California
2  Reconveyance Company, as Trustee on the First Deed of Trust, in an amount according
3  to proof.

4       ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS
5  PRAYED.

6       **FOURTH CLAIM OF RELIEF**

7       (Constructive Fraud)

8       COMES NOW PLAINTIFF GEOFFREY MONCRIEF, and for a separate and
9  distinct CLAIM FOR RELIEF for constructive fraud against Defendant La Jolla Finance,
10 alleges as follows:

11      69.    Plaintiff repeats and re-alleges paragraphs 1 through 68 and incorporates
12 the allegations by reference herein as though fully set forth.

13      70.    Defendant La Jolla Finance had a fiduciary relationship with the Plaintiff
14 as the Plaintiff's mortgage broker.

15      71.    As alleged previously above and below, Defendant La Jolla Finance,
16 through its agent Michael Spencer, made false statements and provided false documents
17 about the affordability of the loan and forwarded false documents to the Plaintiff.

18      72.    Defendant La Jolla Finance gained an advantage because Plaintiff trusted
19 the expertise of Defendant La Jolla Finance because Defendant La Jolla Finance was
20 supposed to look out for his best interests.

21      73.    Plaintiff justifiably relied upon Defendant La Jolla Finance's
22 misrepresentations and material omissions as alleged above and below in this Complaint.

23      74.    Plaintiff has suffered economic damages in excess of $10,000,000.00, or
24 in an amount to be proven at trial, as a result from the fraudulent concealments by
25 Defendant La Jolla Finance.

26      75.    Further, Plaintiff is informed and believes and, based thereon, alleges
27 that as a legal result of said fraudulent concealments by Defendant La Jolla Finance,

28

Plaintiff has suffered general damages, including severe emotional distress, in an amount exceeding $10,000,000.00, or to be proven at trial.

76. Defendant La Jolla Finance committed the acts herein alleged maliciously, fraudulently, and oppressively, with the reckless disregard of Plaintiff's rights. The conduct of Defendant La Jolla Finance was part of a business plan authorized by the highest level of management to obtain the highest possible unlawful yield spread premiums by placing clients into high risk mortgages. The conduct by the Defendant La Jolla Finance amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manner motivated by greed and employed in a cunning manner as part of Defendant La Jolla Finance's practices and procedures to ignore industry standards in loan underwriting so which thwarts the purpose of Congress in passing the TILA so as to make unseemly profits and by taking advantage of persons such as Plaintiff entitling Plaintiff to recover punitive damages from Defendant La Jolla Finance, in an amount according to proof.

## FIFTH CLAIM FOR RELIEF

### (Quiet Title)

COME NOW PLAINTIFFS GEOFFREY MONCRIEF and LEILA MONCRIEF, and for a separate and distinct CLAIM FOR RELIEF for Quiet Title against Defendants Washington Mutual, JP Morgan Chase, and California Reconveyance Company, as Trustee on the First Deed of Trust, alleges as follows:

77. Plaintiffs repeat and replead paragraphs 1 through 76 and incorporate the allegations by reference therein as though set forth below.

78. Plaintiffs are the owner in fee of title to property commonly known as 417 Sea Ridge Drive, La Jolla, CA 92037. The basis of Plaintiffs' title is a grant deed to the property. The Legal Description of said property is as follows:

APN: 415-062-11-00

LOT 1 OF PARCEL MAP NO. 13066, IN THE CITY OF LA JOLLA, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY

17

1  RECORDER FOR THE SAN DIEGO COUNTY, DECEMBER 23, 1983 AS FILE NO.

2  83-469723 OF OFFICIAL RECORDS. SAN DIEGO COUNTY.  415-062-11-00.

3       79.    Defendants claim and assert interests in the above-described real

4  property which are adverse to Plaintiffs.  The claims of defendants are based on the Deed

5  of Trust.

6       80.    The first deed of trust is invalid and void as to Plaintiff's property

7  because Plaintiffs are entitled to offsets against the promissory note that are secured by

8  the deed of trusts, and these offsets are greater in amount than the sum that would

9  otherwise be due under the promissory note, and/or Plaintiffs are entitled to rescission of

10 the promissory note and deed of trust such that Defendant's claim to the property is

11 released.

12      81.    Plaintiffs seek quiet title as of the date the complaint is filed.

13      ALL FOR WHICH PLAINTIFFS SEEK DAMAGES AND OTHER RELIEF AS

14 PRAYED.

15

16                   **SIXTH CLAIM FOR RELIEF**
                      **(Violations of TILA)**

17

18      COMES NOW PLAINTIFF GEOFFREY MONCRIEF, and for a separate and

19 distinct CLAIM FOR RELIEF for Violation of TILA against Defendants Washington

20 Mutual, La Jolla Finance, JP Morgan Chase, California Reconveyance Company, and

21 DOES 1-10, alleges as follows:

22      82.    Plaintiff repeats and repleads paragraphs 1 through 81 and incorporates

23 the allegations by reference therein as though set forth below.

24      83.    Plaintiff is informed and believes, and thereon alleges, that Defendants

25 Washington Mutual and La Jolla Finance in concert with their agents, have engaged in

26 acts or practices in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-

27 1666j, as amended, and TILA's implementing Regulation Z, 12 C.F.R. §226, as

28 amended.

84.     The terms "amount finance," "annual percentage rate," "closed-end credit," "consumer," "consumer credit," "consummation," "credit," "creditor," "dwelling," "finance charge," "mortgage," "open-end credit," "payment schedule," "points and fees," "residential mortgage transaction," "reverse mortgage transaction," "security interest," and "total of payments" are defined as set forth in Sections 103 and 128 of TILA, 15 U.S.C. §§ 1602 and 1638, and Sections 226.2, 226.4, 226.18, 226.22, 226.32, and 226.33 of Regulation Z, 12 C.F.C. §§ 226.2, 226.4, 226.18, 226.22, 226.32, and 226.33.

85.     The term "Regulation Z" means the regulation of the FRB promulgated to implement TILA and HOEPA, 12 C.F.R. 226, as amended. The term also includes the FRB Official Staff Commentary on Regulation Z, 12 C.F.R. 226, Supp.1, as amended.

86.     The term "TILA" means the Truth in Lending Act, 15 U.S.C. §§ 1601-1666j, as amended. TILA, which took effect on July 1, 1969, is intended to promote the informed use of consumer credit by requiring creditors to disclose credit terms and costs, requiring additional disclosures for loans secured by consumers' homes, and permitting consumers to rescind certain transactions that involve their principal dwellings.

87.     Plaintiff is informed and believes, and thereon alleges, that Defendant Washington Mutual was a "creditor" as that term is defined in Section 103(f) of TILA, 15 U.S.C. § 1602(f), and Section 226.2(a)(17) of Regulation Z, 12 C.F.R. § 226.2(1)(17), and therefore is required to comply with applicable provisions of TILA, HOEPA, and Regulation Z. The loan Defendant Washington Mutual with the assistance of Defendant La Jolla Finance made to the Plaintiff in this action is a mortgage loan covered by TILA and Regulation Z.

88.     Plaintiff is informed and believes, and thereon alleges, that in the course and conduct of offering and making the TILA mortgage loan to Plaintiff, Defendants Washington Mutual and La Jolla Finance violated the requirements of TILA and Regulation Z by failing to make required disclosures in the following respects by:

(a)     failing to disclose in writing the a right of rescission three days prior to closing in violation of 12 C.F.R. § 226.23 (a), (f);

(b)     failing to make written disclosures of the amount being financed and the APR in violation of  C.F.R. § 226.18 (d) (1) Regulation Z, 12 C.F.R. § 226.31(b) and (C)(1);

(c)     failing to disclose a historical example of maximum interest rates and payments for adjustable-rate mortgages in violation of  C.F.R. § 226.19 (b)(2)(viii);

(d)     failing to disclosure the Consumer Handbook on Adjustable-Rate Mortgages ("CHARM Handbook") in violation of C.F.R. § 226.19(b)(1)-(2).

(e)     failing to properly provided a property/hazard insurance disclosure in violation of 12 C.F.R. § 226.4(d)(2).

(f)     failing to properly provide two copies of the Right to Cancel as required by TILA.

89.     Plaintiff is additionally informed and believes, and thereon alleges, that in the course and conduct of offering and making the mortgage loans to Plaintiff, Defendants Washington Mutual and La Jolla Finance violated the requirements of Regulation Z prohibiting asset-based lending, by engaging in a pattern or practice of extending such credit to Plaintiff, based on Plaintiff's collateral rather than considering Plaintiff's current and expected income, current obligations, and employment status to determine whether the consumer is able to make the scheduled payments to repay the

obligation, in violation of Section 129(h) of TILA, 15 U.S.C. § 1639(h), and Section 226.32(e)(1) of Regulation Z, 12 C.F.R. § 226.32(e)(1).

90.    Plaintiff has suffered, and will continue to suffer as the legal result, substantial injury as a result of the violations of TILA by Defendants Washington Mutual and La Jolla Finance as set forth above.

91.    Plaintiff is informed and believes, and thereon alleges, that as a result of the conduct of Defendants Washington Mutual and La Jolla Finance, Plaintiff is entitled to certain amounts already paid, including interest, finance charges and closing costs, as an offset against amounts owing on the loan, and collect statutory damages and attorney fees as well.

92.    Plaintiff is informed and believes the aforementioned loan was sold and resold until it fell under a service contract with Defendant California Reconveyance Company, as Trustee on the Deed in Trust and as trustee for unknown noteholder(s). The above mentioned defects in the loan documents and the missing documents constitute notice that the loan was defective as any reasonable underwriter reviewing the loan file would see the above required documents were not in the file and the errors contained on the face of the documents including the incorrect amount being financed. Thus any successor or assignee claiming an ownership or beneficial interest in the note underlying this loan cannot claim BFP status as the defects are obvious to any underwriter reviewing the documents in the course of a due diligence examination.

93.     Defendant JP Morgan Chase is the successor in interest to Defendant Washington Mutual.

94.     Plaintiff was unaware of the above violations of TILA until a forensic review of his loan documents within one year past of the filing of this Complaint on or about January 29, 2010.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

### SEVENTH CLAIM FOR RELIEF
### (Violation of RESPA, 12 U.S.C. § 2607)

COMES NOW PLAINTIFF GEOFFREY MONCRIEF, and for a separate and distinct CLAIM FOR RELIEF for Violation of RESPA against Defendants Washington Mutual, La Jolla Finance, JP Morgan Chase, California Reconveyance Company, as Trustee on the First Deed of Trust, and DOES 1-10, alleges as follows:

95.     Plaintiff repeats and repleads paragraphs 1 through 94 and incorporates the allegations by reference therein as though set forth below.

96.     In creating the loan Defendants Washington Mutual and La Jolla Finance engaged in acts or practices in violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C.A § 2607 by providing a "federally related loan" to the Plaintiff.

97.     The terms "federally related mortgage loan," "creditor," "thing of value," "settlement services," "title insurance company," "person," "Secretary," "affiliated business arrangement," and "associate" are defined as set forth in 12 U.S.C.A. § 2602.

98.     The term "RESPA loan" means any loan (other than temporary financing such as a construction loan) which is secured by a first or subordinate lien on residential real property (including individual units of condominiums and cooperatives) designed principally for the occupancy of from one to four families, including any such secured

loan, the proceeds of which are used to prepay or pay off an existing loan secured by the same property; and is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government, or is made in whole or in part, or insured, guaranteed, supplemented, or assisted in any way, by the Secretary or any other officer or agency of the Federal Government or under or in connection with a housing or urban development program administered by the Secretary or a housing or related program administered by any other such officer or agency; or is intended to be sold by the originating lender to the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, or a financial institution from which it is to be purchased by the Federal Home Loan Mortgage Corporation; or is made in whole or in part by any "creditor", as defined in <u>section 1602(f) of Title 15</u>, who makes or invests in residential real estate loans aggregating more than $1,000,000 per year.  12 U.S.C.A. § 2602 (A) & (B) (i)(ii)(iii)(iv).

99.     Plaintiff is informed and believes, and thereon alleges, that in the course and conduct of offering and making the RESPA mortgage loan to Plaintiff, Defendants Washington Mutual and La Jolla Finance violated the requirements of RESPA, 12 U.S.C.A. § 2607 by partaking in the following:

(a)     providing a person with a fee, kickback or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b)     providing a fee portion, split or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

23

COMPLAINT OF GEOFFREY MONCRIEF
MONCRIEF v. WASHINGTON MUTUAL, F.A., et. al.

100.   The illegal yield spread premium was not reasonably related to any services provided by Defendant La Jolla Finance.

101.   Plaintiff has suffered actual damages of at least $49,000.00 for the unlawful yield spread premium, which served as a kickback to Defendant La Jolla Finance.

102.   Plaintiff is entitled to treble damages under 12 U.S.C. § 2607(d)(2).

103.   Plaintiff is entitled to reasonable attorney's fees and costs under 12 U.S.C. § 2607(d)(5).

104.   Washington Mutual and La Jolla Finance are jointly and separately liable for the violation of section 2607.

105.   Defendant JP Morgan Chase is the successor in interest to Defendant Washington Mutual.

106.   The violation of section 2607 was discovered within one year past after a forensic review of the Plaintiff's loan documents that occurred in or around January 29, 2010.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.


ALL FOR WHICH PLAINTIFF PRAYS AS FOLLOWS:

**On the First Claim for Relief for Intentional Misrepresentation:**

1. Compensatory damages in an amount in excess of $10,000,000.00, or to be proven at trial;

2. General damages in an amount in excess of $10,000,000.00, or to be proven at trial;

3. Punitive damages in an amount to be proven at trial;

24

**On the Second Claim for Relief for Fraudulent Concealment:**

1.  Compensatory damages in an amount in excess of $10,000,000.00, or to be proven at trial;

2.  General damages in an amount in excess of $10,000,000.00, or to be proven at trial;

3.  Punitive damages in an amount to be proven at trial;

**On the Third Claim for Relief for Breach of Fiduciary Duty:**

1.  Compensatory damages in an amount in excess of $10,000,000.00, or to be proven at trial;

2.  General damages in an amount in excess of $10,000,000.00, or to be proven at trial;

3.  Punitive damages in an amount to be proven at trial;

**On the Fourth Claim for Relief for Constructive Fraud:**

1.  Compensatory damages in an amount in excess of $10,000,000.00, or to be proven at trial;

2.  General damages in an amount in excess of $10,000,000.00, or to be proven at trial;

3.  Punitive damages in an amount to be proven at trial;

**On the Fifth Claim for Relief for Quiet Title:**

1. Judgment that Plaintiff are the owners in fee simple of the Property and that Defendants have no interest in the properties adverse to Plaintiff;

**On the Sixth Claim for Relief for Violations of TILA:**

1. Rescission;

2. Damages;

3. Offset of amounts owing;

**On the Seventh Claim for Relief for Violations of RESPA:**

1. Actual Damages;

2. Treble Damages;

3. Attorney's fees and costs.

**On all Claims for Relief:**

1. Costs of suit;

2. Attorneys fees; and

3. Such other relief as the court deems just and proper.

DATED: February 12, 2010                     KENT C. WILSON

                                             By:_____
                                             Kent C. Wilson
                                             **Attorney for Plaintiffs**

# VERIFICATION

I, the undersigned, certify and declare that I have read the foregoing complaint and know its contents. I certify that the same is true of my own knowledge, except as to those matters which are therein stated upon my information or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. This verification was signed in the City of San Diego.

DATED: ___2/12___ ,2010

GEOFFREY MONCRIEF

1

VERIFICATION

JS 44 (Rev. 12/07) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
GEOFFREY MONCRIEF, LEILA MONCRIEF, individuals,

**DEFENDANTS**
WASHINGTON MUTUAL, FA, et. al.

FILED

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

2010 FEB 12 AM 11: 47
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Law Office of Kent C. Wilson, 600 W. Broadway, 7th Floor, San Diego, CA 92101

Attorney's (If Known)

'10 CV 0350 DMS RBB  DEPUTY

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff
☒ 3   Federal Question (U.S. Government Not a Party)
☐ 2   U.S. Government Defendant
☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Med. Malpractice | ☐ 625 Drug Related Seizure | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability   ☐ 365 Personal Injury - | of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander   ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Injury Product | ☐ 650 Airline Regs. | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability   Liability | ☐ 660 Occupational | | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine   **PERSONAL PROPERTY** | Safety/Health | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product   ☐ 370 Other Fraud | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability   ☐ 371 Truth in Lending | **LABOR** | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   Property Damage | Act | ☐ 864 SSID Title XVI | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability   ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Product Liability | ☐ 730 Labor/Mgmt.Reporting | **FEDERAL TAX SUITS** | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | or Defendant) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting   ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 871 IRS—Third Party | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment   Sentence | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/   **Habeas Corpus:** | Security Act | | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations   ☐ 530 General | **IMMIGRATION** | | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare   ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination |
| ☒ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - | | Under Equal Access |
| | Employment   ☐ 550 Civil Rights | Alien Detainee | | to Justice |
| | ☐ 446 Amer. w/Disabilities -   ☐ 555 Prison Condition | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | Actions | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1   Original Proceeding
☐ 2   Removed from State Court
☐ 3   Remanded from Appellate Court
☐ 4   Reinstated or Reopened
☐ 5   Transferred from another district (specify)
☐ 6   Multidistrict Litigation
☐ 7   Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
12 U.S.C. § 2607, 15 U.S.C. §§ 1601-1666j
Brief description of cause:
RESPA, TILA

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**
(See instructions):   JUDGE _____ DOCKET NUMBER _____

DATE
2/12/2010
SIGNATURE OF ATTORNEY OF RECORD
KW

FOR OFFICE USE ONLY

RECEIPT # 10179   AMOUNT $350   APPLYING IFP m 2/12/10   JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.       (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.      Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.      Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**        Example:        U.S. Civil Statute: <u>47 USC 553</u>
                                                                Brief Description: <u>Unauthorized reception of cable service</u>

**VII.   Requested in Complaint. Class Action.** Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.  Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS010179
Cashier ID: kdelabar
Transaction Date: 02/12/2010
Payer Name: KENT C WILSON
-----------------------------------
CIVIL FILING FEE
 For: KENT C WILSON
 Case/Party: D-CAS-3-10-CV-000350-001
 Amount:         $350.00
CERTIFICATION OF DOCUMENT
 For: KENT C WILSON
 Amount:           $9.00
-----------------------------------
CHECK
 Check/Money Order Num: 2467
 Amt Tendered:  $359.00
-----------------------------------
Total Due:      $359.00
Total Tendered: $359.00
Change Amt:       $0.00


There will be a fee of $45.00
charged for any returned check.
```